# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY J. STANCEU, JUDGE

| | | |
|---|---|---|
| YAMA RIBBONS AND BOWS CO., LTD. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 19-00047 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| BERWICK OFFRAY, LLC, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |
| _____ __ | ) | |

## COMMENTS BY YAMA RIBBONS AND BOWS CO., LTD. ON COMMERCE'S FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND

John J. Kenkel
Alexandra H. Salzman
Judith L. Holdsworth
J. Kevin Horgan
**deKieffer & Horgan, PLLC**
Suite 410
1090 Vermont Ave., N.W.
Tel:  (202) 783-6900
Fax:  (202) 783-6909
Email: jkenkel@dhlaw.com
Counsel for Plaintiff *Yama Ribbons & Bows Co., Ltd.*

Dated: September 13, 2021

# TABLE OF CONTENTS

I.     SUMMARY ...................................................................................................................1

II.  COMMERCE FAILED TO COMPLY WITH THE COURT'S ORDER
     REGARDING LTAR FOR SYTHETIC YARN AND CAUSTIC SODA ..................2

    A.  Commerce is incorrect when it continues to find that AFA is warranted due to
        its perception that the GOC did not provide the requested information needed
        to allow Commerce to fully analyze these alleged
        subsidies..........................................................................……………..,,,,,,,,,2

        1.  As a preliminary matter, Commerce, despite the Court's ruling, continues
            to call the LTAR for synthetic yarn and caustic soda "subsidies."…..3

        2.  Commerce spends an inordinate amount of time denigrating its term
            "program," and the GOC responses regarding any program…………3

    B.  Despite the above facts, Commerce continues to address the issue of
       "specificity." …………………………………………………………………. 5

        1.  The issue of specificity is moot……………………………………….. 5

        2.  The administrative record demonstrates that the GOC could not answer
            certain questions regarding specificity. This does not warrant AFA…. 6

        3.  Commerce has framed the LTAR issue incorrectly. ….……………… 7

        4.  Commerce inexplicably accepts certain answer from the GOC for
            *de jure* purposes but not *de facto* purposes. ………………………….. 7

III.    THE USE OF 2015 ADMINISTRATIVE REVIEW MATERIALS IS
      UNWARRANTED. .................................................................................................9

IV.  CONCLUSION...............................................................................................................9

# TABLE OF AUTHORITIES

**CASES**

*Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1327 (Fed. Cir. 2009)* ...............................5

*Novosteel SA v. United States, 284 F.3d 1261, 1276 (Fed. Cir. 2002)* ..........................................5

**STATUTES**

19 U.S.C. 771(5A) ....................................................................................................................... 6

**Comments by Yama Ribbons and Bows Co., Ltd. on Commerce's**
**Final Results of Redetermination Pursuant to Court Remand**
**Narrow Woven Ribbons with Woven Selvedge from the People's Republic of China**
*Yama Ribbons and Bows Co., Ltd. v. United States*,
**Court No. 19-00047, Slip. Op. 21-50 (CIT April 30, 2021)**

## I.    SUMMARY

The U.S. Department of Commerce was remanded this case and directed by the Court to change its decisions concerning (1) export buyer's credit program (EBCP), and (2) the alleged provision of synthetic yarn and caustic soda for less-than-adequate remuneration (LTAR), in order to comply with the statute.  The Court found that inclusion of these programs in Yama's overall subsidy margin was unlawful.  Originally, Commerce applied facts available and adverse facts available (AFA) to the government of China (GOC) and, hence, to Yama due to perceived deficiencies in the government of China (GOC) responses regarding both of these programs.

Regarding EBCP, Commerce, under respectful protest, has recommended deleting the CVD margin for this program from the overall rate applicable to Yama.  Yama endorses this change.  Thus, Yama provides no further comment, below.

For the alleged LTAR subsidies for synthetic yarn and caustic soda, Commerce continues to refuse to amend its decision because, *inter alia*, it asserts the Court misinterpreted Commerce's reference to "program." Thus, the Court's basis of using a "program," or lack thereof, as the rationale for confirming/denying that a subsidy exists, is in error.  This is because Commerce's reference to the word "program" is used for ease of reference, rather than being a legal term.  *See* Final Rem. Red. at 11-13.   In addition, Commerce continues to argue that the "specificity" test is met in this case.  Moreover, Commerce continues to find that the GOC did not fully answer its questions, thereby asserting that both facts available and AFA are warranted, despite the Court's Opinion to the contrary.  Commerce states this is particularly true regarding

whether the perceived subsidies are specific within the meaning of the statute.  Id. at 15.

Moreover, Commerce argues that the GOC responses only addressed *de jure*, not *de facto*,

considerations, again leading Commerce to conclude that AFA continues to be warranted.  In

essence, Commerce, disingenuously, seems to argue that "no involvement by the GOC in pricing

or production limits" as applicable to *de jure* considerations, could be the opposite ("no") when

applied to *de facto* issues.  This simply makes no sense and is based on speculation.  Thus,

Commerce believes that it does not have to accept substantial evidence on the record and apply it

to the *de facto* considerations.  This does not pass the "red face" test.

      As part of this remand, Commerce added 400+ pages to the record, from a prior review –

some of which dates back to 2010 – to bolster its argument (so-called 2015 NSA allegation by

petitioners).  Not even a scintilla of these 400+ pages pertains to the administrative review at bar.

      In sum, Commerce continues to argue that the GOC did not act to the best of its ability

and, therefore, AFA is warranted.  This is despite the Court's clear decision that (1) the GOC

fully answered the questions necessary to determine whether an LTAR subsidy existed in the

POR, and (2) that the GOC evidence in uncontradicted.  This final remand redetermination does

not alter the Court's findings and conclusions.  Rather, Commerce is using semantics

("program") to distinguish its determination from the Court's findings.   Yama disagrees with all

of these conclusions by the Department as demonstrated in detail, below.

## II.    COMMERCE FAILED TO COMPLY WITH THE COURT'S ORDER REGARDING LTAR FOR SYTHETIC YARN AND CAUSTIC SODA.

      Yama addresses each point in Commerce final remand redetermination, below.

### A. Commerce is incorrect when it continues to find that AFA is warranted due to its perception that the GOC did not provide the requested information needed to allow Commerce to fully analyze these alleged subsidies.

Commerce continues to find that AFA is warranted. Yet, nowhere does it specifically address the Court's Order which determined that the GOC fully answered the relevant questions and the administrative record is complete in that regard, leading to no finding of a subsidy predicated on substantial evidence on the record. Indeed, Commerce never even attempts to address its rational for use of AFA, much less defend it. Rather, Commerce implicitly proceeds from its original finding that AFA is warranted and its entire remand redetermination is based on that assumption and the fact that the Court misapplied the term "program."

1. **As a preliminary matter, Commerce, despite the Court's ruling, continues to call the LTAR for synthetic yarn and caustic soda "subsidies."**

Contrary to the Court's Opinion, Commerce demonstrates its lack of objectivity in this proceeding by calling the issue of LTAR "subsidies." Final Rem. Red. at 9. This demonstrates a clear, continued prejudice by Commerce regarding potential subsidies regarding LTAR. This Court has deemed the use of AFA "unlawful," yet Commerce does not relent.

2. **Commerce spends an inordinate amount of time denigrating its term "program," and the GOC responses regarding any program.**

Commerce tries to use semantics to provide an excuse to not comply with the Court's Order. The relevance of "program" relates to Question "f." in Commerce's first supplemental questionnaire to the GOC.

> f. A discussion of what laws, plans or policies address the pricing of the input, the levels of production of the input, the importation or exportation of the input, or the development of the input capacity. Please state which, if any, central and subcentral level industrial policies pertain to the input industry.

In its response, the GOC answered that it did not have any programs regarding LTAR for the two inputs. The GOC used "program" as a synonym for "laws, plans or policies" in the question. Its answer was clear and the Court agreed.

Nowhere in the remand redetermination does Commerce assert that anywhere in its

questionnaires, it asked simply about "subsidies."  The GOC answered the specific question asked by Commerce.  Now, as a *post hoc* justification to ignore the GOC's clear answers, Commerce says "program" is not a legal term.  If that is true, why did Commerce not simply ask about "subsidies" rather than "laws, plans, or policies" in its questionnaires?  A "law, plan, or policy" is tantamount to a "program," yet Commerce belatedly argues that "programs" (and, presumably, laws, plans, or policies) are no longer relevant.  Only a "subsidy," whether *de facto*, or intended via a law, plan, or policy (or program), is relevant since only that term is found in the statute.

 If this is true, Commerce simply asked the wrong question in the administrative review.  A party is only required to answer questions asked of it.  No party is obliged to guess what questions Commerce should have asked, i.e., about a subsidy, rather than a law, plan, policy or program.  This is the major point Commerce makes to ignore the Court's order.  That is, the GOC did not answer the unasked question about "subsidies."  Therefore, the GOC did not provide complete answers and failed to cooperate to the best of its ability, according to Commerce's logic.

As seen, above, this rationalization is without merit.  Commerce cannot blame the GOC for answering its precise question, yet not answering a question Commerce implicitly admits it should have asked.  The administrative record stands as it is.  The Court made clear in its Opinion that Commerce did not comply with the statute in using AFA, and Commerce further failed to even address in its Final Decision Memorandum certain issues which the Court found clearly exonerate both the GOC and Yama because the responses constitute substantial evidence on the record regarding LTAR.

Indeed, Commerce, given its new, impermissible position on "subsidy" vis-a-vis "program," failed to ask the appropriate question about a "subsidy" even once, much less twice, as required by the statute, before it can impose AFA.  Moreover, even the single question about any law, plan, or

policy was not asked twice. Thus, for two reasons, Commerce failed to comply with the statute before imposing AFA. Moreover, the Court noted that there is no gap in the record to which Commerce could apply AFA.

Commerce, however, completely dismisses the GOC response concerning any program for LTAR. "Accordingly, Commerce does not place weight on the GOC's statements concerning whether a program exists." Id. at 13. Thus, the substantial evidence on the record that the Court used in its Opinion, continues to be overtly and completely ignored by Commerce.

**B. Despite the above facts, Commerce continues to address the issue of "specificity."**

**1. The issue of specificity is moot.**

Commerce also addresses the issue of "specificity." Id. at 10-17. Once the Court determined that the GOC answered the question about any law, plan, or policy regarding LTAR, the inquiry should have ended.

One does not need to then address specificity, authorities, etc. if the subsidy question is fully answered in the negative. There cannot be any specificity related to the lack of a subsidy, nor any authority, since nothing was granted, much less received by Yama.

As part of its impermissible *post hoc* justification, Commerce would now have the Court believe that subsidies can just miraculously appear without any law, plan, policy, or program. Commerce provides not even a scintilla of evidence to support such a conclusion. This is mere speculation, which cannot substitute for substantial evidence on the record. Moreover, when substantial evidence is not utilized, such action is tantamount to the use of speculation in making a determination. *See Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1327 (Fed. Cir. 2009) ("It is well established that speculation does not constitute 'substantial evidence.'" (quoting *Novosteel SA v. United States,* 284 F.3d 1261, 1276 (Fed. Cir. 2002) (internal quotation marks omitted)).

## 2. The administrative record demonstrates that the GOC could not answer certain questions regarding specificity. This does not warrant AFA.

Commerce appears to reluctantly acknowledge that the GOC, in its supplemental response, stated that it did not have the data requested by Commerce regarding a list of industries, volume and value of synthetic yarn and caustic soda purchased in the POR, etc. Id. at 14-15. Because of this, Commerce stated that the record was incomplete regarding specificity. However, Commerce then states that "the GOC failed to provide necessary information that Commerce requested regarding whether these subsidies are de facto specific within the meaning of 771(5A) of the Act." Id. at 15. Commerce cannot hold the GOC accountable for information it does not possess. Yet, this is exactly what Commerce has done in the final remand redetermination.

> Accordingly, because the GOC failed to provide this necessary information,
> Commerce is relying on facts otherwise available for this determination.
> Moreover, as a result of the incomplete responses to Commerce's supplemental
> questionnaire, we find that the GOC failed to cooperate by not acting to the best
> of its ability in providing requested information.

Id. at 15 (footnotes omitted). It is patently unreasonable to declare that AFA is warranted when a party does not have the data requested. The GOC fully answered the question. It was just not the answer Commerce wanted, but it was a complete answer: the GOC does not have the requested data.

Because Commerce concluded that the GOC's lack of data was its own fault, the Department proceeded to add 400+ pages to the administrative record during this remand.

> Therefore, in the absence of the requested information from the GOC in the
> instant review regarding the *de facto* specificity of these programs, we
> examined the 2015 NSA Information which we placed on the record.

Id. at 15. Since the GOC did not fail to answer the question, Commerce cannot find that it failed to cooperate to the best of its ability. Therefore, any use of the 400+ pages from a prior

administrative review cannot be used.  Moreover, that data is not from the underlying administrative review and, therefore, not relevant.

It is only because of Commerce's continued intransigence that it is trying to do an "end run" around the Court's Order and the statute by not complying with the provisions for use of AFA.  Again, the Court found no gaps in the record to which AFA could be applied.

### 3. Commerce has framed the LTAR issue incorrectly.

Commerce argues that if LTAR benefits are granted to only certain industries, rather than all industries in China, then such benefits are specific.  Id. at 15-16.  Rather than looking at LTAR overall to make such a decision, Commerce is looking at specific inputs, such as synthetic yarn and caustic soda.  However, this is not correct.  Using Commerce's method results in artificially finding LTAR benefits in all industries.  For example, grass is used as an input in feeding animals, making it specific to the agriculture industry.  Iron ore is used as an input in the steel industry.  Cows do not eat iron ore and one cannot use grass to make steel.  It is not the input that is important to the question of specificity but the overall "program" law, plan, or policy.  For decades, Commerce has gone unchallenged in its framing of the specificity question to ensure that no industry in China can win this argument.  This is neither reasonable nor fair.  Commerce only requires a miraculous event to create a subsidy (not a program, plan, etc.), combined with framing the question not on the real issue, LTAR, but on the inputs themselves.

Accordingly, the information from the 2015 administrative review should not be considered by Commerce.

### 4. Commerce inexplicably accepts certain answers from the GOC for *de jure* purposes but not for *de facto* purposes.

Commerce acknowledges many statements by the GOC regarding the fact that it does

not regulate prices, but rather prices are dictated by market forces. Id. at 16-17. Incredibly, Commerce states that it accepts these answers only for the purpose of determining whether a subsidy is *de jure* specific. Commerce refuses to accept the same answer for purposes of determining whether the GOC response meets the *de facto* test, which it does. This is inherently unreasonable. Does Commerce really believe that it would obtain a different answer vis-à-vis *de facto* specificity? The GOC responses constitute substantial evidence on the record – <u>for all purposes</u>, not simply those which Commerce chooses to accept.

The whole purpose of this LTAR exercise is to determine whether the GOC has attempted to manipulate the market, either production quantity or prices, for synthetic yarn and caustic soda. Yet Commerce states that these answers are not relevant to its *de facto* inquiry. If that is true, why did Commerce ask the questions? Why did it ask about LTAR laws, plans, policies, etc.

> Finally, with regard to the GOC's statements in its responses to Commerce that it does not regulate the pricing of synthetic yarn or caustic soda, and the provision of synthetic yarn and caustic soda is dictated by market forces, not by any plan that sets the levels of production or thedevelopment of these inputs, we note that the GOC provided this information in response to questions regarding the *de jure* specificity of these input LTAR programs. Commerce agrees with the GOC that the Provision of Synthetic Yarn and Caustic Soda for LTAR programs are not *de jure* specific. However, the fact that the prices and the production of these inputs are not regulated by the GOC is not meaningful to our analysis of the *de facto* specificity of these subsidies, which is why Commerce did not address this information, either through supplementalquestionnaires or in either the preliminary or final results of the 2016 administrative review.

Id. at 16-17. Clearly, Commerce has made an admission against interest. It has acknowledged that it abrogated its duty to consider all evidence on the record. Indeed, it now admits that it intentionally refrained from asking certain questions.

**III.     The Use of 2015 Administrative Review materials is unwarranted.**

Commerce disagrees with Yama that Commerce was either not authorized to place NFI on the record of this remand redetermination or that the information placed on the record by Commerce is not necessary to comply with the Court's order.

The Court's Opinion states that there is no gap in the record. *See* Slip Op. at 33. The Court, therefore, intended for Commerce to apply the statute correctly, based on the administrative record.

Moreover, Commerce admits that it is using these 400+ pages for the purpose of determining specificity. However, that question is moot, since the court found that the GOC answered all relevant questions necessary to determine that no benefit exists, much less was conferred to Yama.

Accordingly, there was neither explicit nor implicit authority for Commerce to add to the record. Moreover, that information simply supports Commerce impermissible attempt at a *post hoc* rationalization. Indeed, Commerce admits that the Court found its analysis lacking. Id. at 17. It was the analysis that was lacking, not the data. Commerce conflates the two.

Lastly, that data is up to 10 years old and has zero relevance to the issues in the underlying administrative review.

**IV.     CONCLUSION**

For the above reasons, Yama asks the Department to fully comply with the Court's Order.

*/s/ John J. Kenkel*
John J. Kenkel
Alexandra H. Salzman
J. Kevin Horgan
**deKieffer & Horgan, PLLC**
Suite 410
1090 Vermont Ave., N.W. 20005
Tel:     (202) 783-6900
Fax: (202) 783-6909
Email: jkenkel@dhlaw.com
Counsel for *Yama Ribbons and Bows
Co., Ltd*

Dated: September 13, 2021