UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY J. STANCEU, SENIOR JUDGE

_____
                                                            )
YAMA RIBBONS AND BOWS CO., LTD.,      )
                                                            )
                        Plaintiff,                          )
                                                            )
            v.                                              )
                                                            )
UNITED STATES,                                  )            Court No.:  19-00047
                                                            )
                        Defendant,                       )
                                                            )
and                                                        )
                                                            )
BERWICK OFFRAY, LLC,                       )
                                                            )
                        Defendant-Intervenor.       )
                                                            )
_____)

## DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION

                                        BRIAN M. BOYNTON
                                        Acting Assistant Attorney General

                                        JEANNE E. DAVIDSON
                                        Director

                                        PATRICIA M. MCCARTHY
                                        Assistant Director

OF COUNSEL:                          KARA M. WESTERCAMP
Rachel Bogdan                          Trial Attorney
Attorney                                 U.S. Dept. of Justice
Office of the Chief Counsel           Civil Division
for Trade Enforcement and Compliance  Commercial Litigation Branch
U.S. Department of Commerce        P.O. Box 480
Washington, D.C.                       Ben Franklin Station
                                        Washington, D.C. 20044
                                        Telephone: (202) 616-9322
                                        E-mail: Kara.M.Westercamp@usdoj.gov


September 28, 2021                    Attorneys for Defendant

## **TABLE OF CONTENTS**

BACKGROUND ..................................................................................................................2

    I.    Administrative Determination Under Review ........................................................2

    II.    The Court's Remand Order.....................................................................................4

    III.    Remand Redetermination.........................................................................................5

ARGUMENT ......................................................................................................................7

    I.    Standard Of Review................................................................................................7

    II.    Commerce's Exclusion Of The EBCP Adverse
        Inference Rate Complies With The Remand Order ...............................................8

    III.    Commerce's Less Than Adequate Remuneration
        Findings For Caustic Soda And Synthetic
        Yarn Comply With The Court's Remand Order......................................................8

        A.    Commerce's Application Of Facts Available With An Adverse
            Inference Complies With The Court's Order And Is Supported
            By Substantial Evidence And In Accordance With Law..........................11

        B.    Commerce's Reliance On The 2015
            New Subsidy Allegation Was Lawful.......................................................16

    CONCLUSION...................................................................................................................18

# **TABLE OF AUTHORITIES**

## **CASES**

*Consol. Edison Co. v. NLRB,*
  305 U.S. 197 (1938) ........................................................................... 7

*Consolo v. Fed. Mar. Comm'n,*
  383 U.S. 607 (1966) ........................................................................... 7

*Fresh Garlic Producers Ass'n v. United States,*
  190 F. Supp. 3d 1302 (Ct. Int'l Trade 2016) .................................... 17

*I.N.S. v. Elias-Zacarias,*
  502 U.S. 478 (1992) ........................................................................... 7

*Laclede Steel Co. v. United States,*
  1995 WL 476716 (Ct. In't Trade 1995) ............................................ 17

*MacLean-Fogg Co. v. United States,*
  100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ...................................... 7

*Nippon Steel Corp. v. Int'l Trade Comm'n,*
  345 F.3d 1379 (Fed. Cir. 2003) ........................................................ 17

*Nippon Steel Corp. v. United States,*
  337 F.3d 1373 (Fed. Cir. 2003) ................................................... 14, 15

*Nucor Corp. v. United States,*
  612 F. Supp. 2d 1264 (Ct. Int'l Trade 2009) ...................................... 8

*Shandong Rongxin Import & Export Co., Ltd., v. United States,*
  203 F. Supp. 3d 1327 (Ct. Int'l Trade 2017) ................................ 10, 16

*Yama Ribbon and Bows Co. v. United States,*
  517 F. Supp. 3d 1325 (Ct. Int'l Trade 2021) ............................. *passim*

## **STATUTES**

19 U.S.C. § 1677 ..................................................................... *passim*

## **REGULATIONS**

19 C.F.R. § 351.511 .......................................................................... 9

## <u>ADMINISTRATIVE DECISIONS</u>

*Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances*
73 Fed. Reg 31,966 (Dep't of Commerce June 5, 2008). ........................................................ 13

*Narrow Woven Ribbons with Woven Selvedge from the People's Republic of China*
84 Fed. Reg. 11,052 (Dep't of Commerce Mar. 25, 2019)..................................................... 2, 8

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY J. STANCEU, SENIOR JUDGE

|  |  |  |
|---|---|---|
| YAMA RIBBONS AND BOWS CO., LTD., | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| UNITED STATES, | ) | Court No.:  19-00047 |
| Defendant, | ) | |
| and | ) | |
| BERWICK OFFRAY, LLC, | ) | |
| Defendant-Intervenor. | ) | |

## DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION

Defendant, the United States, respectfully submits this response to the comments of plaintiff, Yama Ribbons and Bows Co., Ltd. (Yama), Yama Comments Opposing Remand Redetermination (Yama Remand Comments), ECF No. 52, concerning the United States Department of Commerce's (Commerce) final remand results filed in accordance with this Court's decision and remand order in *Yama Ribbon and Bows Co. v. United States*, 517 F. Supp. 3d 1325 (Ct. Int'l Trade 2021) (Remand Opinion).  *See* Final Results of Redetermination Pursuant to Court Remand, Aug. 13, 2021 (Remand Redetermination), ECF No. 47, P.R.R. 13.[1]

---

[1] Citations to public and confidential documents from the administrative record are identified as "P.R. __" and "C.R. __," respectively and documents from the administrative remand record identified as "P.R.R. __" and "C.R.R. __," respectively.

The Court should sustain Commerce's remand results because they comply with the remand order and are supported by substantial evidence and otherwise in accordance with law. Specifically, Commerce reconsidered its decision to apply facts available with an adverse inference in evaluating use of the export buyers credit program (EBCP) and determined, under respectful protest, that the EBCP was not used by Yama based on record information and statements by Yama and the government of China that none of Yama's customers used the program during the period of review.  Remand Redetermination at 9.  Therefore, Commerce revised Yama's overall subsidy rate to exclude the 10.54 percent facts available with an adverse inference subsidy rate assigned to the EBCP.  *Id.* at 1.

Commerce also reconsidered and further explained its specificity finding regarding the provision of synthetic yarn and caustic soda for less than adequate remuneration in light of all record information related to these programs.  In the remand results, Commerce determined that: (1) the provision of synthetic yarn and caustic soda for less than adequate remuneration programs meets the specificity requirement of the statute and, therefore, are countervailable subsidies; and (2) Yama benefited from these programs during the period of review.  *Id.* at 2.  Accordingly, we respectfully request that the Court sustain the remand redetermination.

## BACKGROUND

## I.  Administrative Determination Under Review

The administrative determination under review is the final results of the 2016 administrative review of the countervailing duty order covering narrow woven ribbons with woven selvedge from the People's Republic of China.  *See Narrow Woven Ribbons with Woven Selvedge from the People's Republic of China*, 84 Fed. Reg. 11,052 (Dep't of Commerce Mar. 25, 2019) (final admin. review) (Final Results) (P.R. 118), and accompanying Issues and

Decision Memorandum (IDM) (P.R. 117).  The period of review is January 1, 2016, through

December 31, 2016.

In the final results, Commerce had used an adverse inference in selecting from the facts

otherwise available on the record in countervailing the EBCP program.  IDM at 15.  Commerce

determined the Chinese government had failed to act to the best of its ability in responding to

requests for information regarding the EBCP.  *Id.*  Without this information, Commerce

explained that it was unable to understand how the export buyer's credits flow to/from foreign

buyers and the Export-Import Bank.  *Id.* at 15-16.  Accordingly, Commerce determined that it

was unable to rely on the Chinese government's and Yama's claims of non-use of the program

and that, based on facts available with an adverse inference, Yama used and benefitted from the

program.  *Id.* at 15.  In selecting an adverse rate for the EBCP, Commerce selected a 10.54

percent rate pursuant to its established hierarchy in applying adverse facts available in

administrative reviews of countervailing duty orders.  *Id.* at 6.

With regard to the provisions of synthetic yarn and caustic soda for less than adequate

remuneration, Commerce explained that it had lacked record information from the Chinese

government to determine whether:  (1) the prices from transactions involving Chinese buyers and

sellers were significantly distorted by the involvement of the Chinese government; and (2) the

private companies that supplied Yama with synthetic yarn and caustic soda were "authorities"

within the meaning of section 19 U.S.C. § 1677(5)(B).  *Id.* at 13.  Regarding financial

contribution, Commerce determined that because Yama had reported that it had purchased

synthetic yarn from eight producers of synthetic yarn and from one producer of caustic soda

during the period of review, it would rely on facts available with an adverse inference because

the Chinese government had failed to respond to Commerce's request for information regarding

the companies that had supplied Yama these inputs.  *Id.*  Commerce, thus, determined that Yama

had received financial contributions from these suppliers in the form of the provision of a good,

pursuant to section 19 U.S.C. § 1677(5)(D)(iii).  *Id.*

Finally, to determine specificity, Commerce had requested that the Chinese government

provide a list of industries in China that purchase synthetic yarn and caustic soda, identify the

classification scheme the government normally relies on to define industries, and classify

companies within an industry.  However, the Chinese government had failed to respond to

Commerce's request for information.  Thus, Commerce determined, based on facts available

with an adverse inference, that the government of China's provision of these inputs is specific

within the meaning of section 19 U.S.C. § 1677(5A)(D).  *Id.* at 12-13.  Accordingly, Commerce

determined that these programs confer a countervailable subsidy.  *Id.*

## II.    <u>The Court's Remand Order</u>

The Court remanded to Commerce its countervailability determinations regarding the

EBCP and the provisions for synthetic yarn and caustic soda for less than adequate remuneration.

*Yama*, 517 F. Supp. 3d at 1341-42.  Regarding the EBCP, the Court held that Commerce had

disregarded considerable record evidence that Yama did not benefit from the EBCP, that there

was no evidence on the record of the review to support a finding that any of Yama's U.S.

customers used the EBCP, and that record evidence did not establish a relationship between the

missing information regarding the 2013 revisions to the EBCP and whether Yama's customers

had used the EBCP program.  *Id.* at 1330, 1335.  Accordingly, the Court remanded for

Commerce to reconsider the record evidence fairly and impartially and reach a new

determination on whether Yama had benefitted from the EBCP during the period of review.  *Id.*

at 1335.

Regarding the provisions of synthetic yarn and caustic soda for less than adequate remuneration, the Court held that Commerce had not presented a convincing reason for concluding that, as facts available with an adverse inference, the specificity requirement in 19 U.S.C. § 1677(5) and (5A) was met for these programs. *Id.* at 1338. Additionally, the Court held that Commerce had conducted no analysis to support its adverse inferences that these programs had benefitted a limited or preferred group (*i.e.*, were specific), and that Commerce's failure to address record evidence that these programs do not exist in China was a critical omission from its analysis supporting its decision to impose a duty on Yama for these two programs. *Id.* at 1340-41. The Court held that there was no "gap" to be filled by facts otherwise available and adverse inferences regarding specificity because other responses by the Chinese government introduced "uncontradicted evidence that no programs existed upon which a relevant specificity analysis could have been conducted." *Id.* at 1341.

Accordingly, the Court did not address Yama's challenges to Commerce's "authorities" determination, based on facts available with an adverse inference, regarding these programs and inclusion of value-added tax and ocean freight in the subsidy rates for these two programs. *Id.* at 1338. However, the Court remanded to Commerce to reconsider its decision to include in Yama's overall subsidy rate the provisions of synthetic yarn and caustic soda for less than adequate remuneration, and to "take the corrective action that is necessary to fulfill the requirements of the statute." *Id.* at 1342.

**III.**   **Remand Results**

On August 13, 2021, Commerce issued its remand results. On remand, Commerce reexamined the record evidence provided by Yama and the Chinese government regarding Yama's and its customers' claimed non-use of the EBCP and found that Yama did not use the

5

EBCP program during the period of review, under respectful protest.  Remand Redetermination at 9.  Thus, Commerce removed the 10.54 percent adverse inference subsidy rate from Yama's overall subsidy rate.  *Id.* at 1, 9.

On remand, Commerce further reevaluated the information on the record regarding the provisions for caustic soda and synthetic yarn for less than adequate remuneration and addressed the "specificity" requirements in the statute.  *Id.* at 10, 13-17.  Commerce also placed information on the record from the prior administrative review in which the petitioner first alleged the existence of these subsidies.  *Id.* at 7-8; *see also* New Subsidy Allegation Memo (P.R.R. 1-5).  In placing such information on the record, Commerce permitted interested parties the opportunity to comment on this information and to place rebuttal information on the record, although no party did so.  *See* Memo to the File Allowing Rebuttal Information (P.R.R. 1). Commerce also explained that it was unnecessary for it to revisit its determination with respect to whether the producers of synthetic yarn and caustic soda are authorities within the meaning of section 19 U.S.C. § 1677(B), because the Court did not reach this particular issue for purposes of the remand.  Remand Redetermination at 13.

Moreover, Commerce determined that necessary information regarding its *de facto* specificity analysis was not on the record and the Chinese government had failed to act to the best of its ability in responding to Commerce's questions on this issue.  *Id.* at 13-14.  Thus, in relying on facts otherwise available with an adverse inference for this specificity finding, Commerce examined the 2015 new subsidy information that it had placed on the record, that is, the information from the prior administrative review.  *Id.*  Commerce identified that such information demonstrated that use of the synthetic yarn and caustic soda is limited in number and therefore, both provisions for less than adequate remuneration are *de facto* specific pursuant to

6

19 U.S.C. § 1677(5A)(D)(iii)(I).  *Id.* at 15-16.  Commerce explained that even though the

Chinese government had responded to Commerce's requests regarding these subsidies claiming

that no such programs existed, information on the record demonstrates that these assertions were

incorrect.  *Id.* at 16.

Consequently, Commerce found that the provisions of synthetic yarn and caustic soda for

less than adequate remuneration programs meet the specificity requirements of the statute.  *Id.* at

17.  As a result, despite the Chinese government's claims to the contrary, Commerce maintained

that these input less than adequate remuneration subsidies are countervailable subsidies that had

provided a benefit to Yama during the period of review.  *Id.*

## ARGUMENT

### I.       Standard Of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in

accordance with the remand order," and are "supported by substantial evidence, and are

otherwise in accordance with law."  *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349,

1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).  "Substantial evidence"

means "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  Accordingly, "the

possibility of drawing two inconsistent conclusions from the evidence does not prevent an

administrative agency's finding from being supported by substantial evidence."  *Consolo v. Fed.*

*Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted).  Rather, when Congress has

entrusted an agency to administer a statute that demands inherently fact-intensive inquiries, as

here, the agency's conclusions may be set aside only if the record contains evidence "so

compelling that no reasonable factfinder" could reach the same conclusion.  *I.N.S. v. Elias-*

*Zacarias*, 502 U.S. 478, 483-84 (1992); *accord Nucor Corp. v. United States*, 612 F. Supp. 2d 1264, 1287 (Ct. Int'l Trade 2009).

## II.    Commerce's Exclusion Of The EBCP Adverse Inference Rate Complies With The Remand Order

The Court directed Commerce on remand to reconsider the record evidence regarding the EBCP and to reach a new determination on whether Yama benefitted from the EBCP during the period of review.  *Yama*, 517 F. Supp. 3d at 1335.  Consistent with the remand order, Commerce reconsidered the record evidence that Yama and the Chinese government had provided stating that Yama's customers did not use the EBCP and determined, under protest, that Yama did not use the program during the review.  Remand Redetermination at 9.  Thus, Commerce excluded the EBCP from the subsidy programs included in Yama's overall subsidy rate.  *Id.* at 25. Accordingly, because Commerce reconsidered the evidence the Court instructed it to reconsider and determined Yama did not use this program during the period of review, Commerce complied with the Court's remand order.  *See Yama*, 517 F. Supp. 3d at 1335; Yama Remand Comments at 1 (supporting this change).

## III.   Commerce's Less Than Adequate Remuneration Findings For Caustic Soda And Synthetic Yarn Comply With The Court's Remand Order

With respect to the less than adequate remuneration finding for caustic soda and synthetic yarn, the Court held that "Commerce reached these adverse inferences despite uncontradicted record evidence, consisting of the aforementioned questionnaire responses of the Chinese government, that no such program or programs existed."  *Yama*, 517 F. Supp. 3d at 1338.  On remand, the Court instructed Commerce to "reconsider its decision to include in Yama's overall subsidy rate individual subsidy rates related to Yama's synthetic yarn and caustic soda inputs and take the corrective action that is necessary to fulfill the requirements of the statute."  *Id.* at 1342.

In the remand results, Commerce reconsidered the record evidence, including the new subsidy allegation memorandum it had placed on the record regarding these two subsidies, and further explained its use of facts otherwise available with an adverse inference in determining that these input less than adequate remuneration subsidies meet the specificity requirements of the statute.  Remand Redetermination at 13-17; *see also* 19 U.S.C. §§ 1677e(a), 1677e(b).  Commerce explained how it uses the term subsidy "program" as shorthand and, in determining whether a subsidy exists (here, a good for less than adequate remuneration), it focuses on the statutory requirements, *i.e.*, whether an authority had provided a financial contribution that benefits the respondent and whether the provision of that subsidy is specific, not simply whether a "program" exists.  *Id.* at 11-13 (citing 19 U.S.C. §§ 1677(5A), 1677(5), and 19 C.F.R. § 351.511).

Accordingly, based on the requirements outlined in the statute and regulations, Commerce explained that the evidence it sought was whether the synthetic yarn and caustic soda producers are authorities under the law; whether the prices of the inputs purchased are made at prices that are at less than adequate remuneration; and whether the subsidy provided is limited to an enterprise, industry, or group thereof.  *Id.* at 13.  Commerce explained that an authority can provide a subsidy by providing a good at less than adequate remuneration to an enterprise, industry, or group thereof, notwithstanding whether the government intended to subsidize the recipient or set up a program to do so.  *Id.* at 12-13 (citing 19 U.S.C. §§ 1677(5)(A), (B), and 19 C.F.R. § 351.511).  Therefore, Commerce explained that it did not place weight on the Chinese government's statements concerning whether a "program" exists.  *Id.* at 13.

Commerce also explained how the Chinese government's responses had failed to provide it with necessary information related to its specificity determination for these provisions and

because of these incomplete responses, it continued to find that the government had failed to act to the best of ability.  *Id.* at 14-15.  Therefore, in relying on facts available with an adverse inference, Commerce identified that evidence in the New Subsidy Allegation Memorandum demonstrating that each provision is *de facto* specific.  *Id.* at 15-16.  Commerce also clarified that even though the Chinese government had demonstrated that these programs are not *de jure* specific through its responses, such that it does "not regulate the pricing of synthetic yarn or caustic soda, and the provision of synthetic yarn and caustic soda is dictated by market forces, not by any plan that sets the levels of production or the development of these inputs," this information was not meaningful for Commerce's separate *de facto* specificity analysis.  *Id.* at 16-17.

Moreover, in response to comments from Yama, Commerce explained that its placement on the record of the new subsidy allegation new factual information was not in violation of the Court's remand order.  *Id.* at 17.  Commerce explained the relevance of the information to its analysis and that it was permitted to reopen a record on remand, "unless the Court includes specific language barring Commerce from doing so," which it did not do here.  *Id.* (citing *Shandong Rongxin Import & Export Co., Ltd., v. United States*, 203 F. Supp. 3d 1327, 1338-39 (Ct. Int'l Trade 2017)).

Thus, the Court should sustain Commerce's remand results because they comply with the Court's order, are supported by substantial evidence, and are otherwise in accordance with law.

A.    **Commerce's Application Of Facts Available With An Adverse Inference Complies With The Court's Order And Is Supported By Substantial Evidence And In Accordance With Law**

Commerce's use of facts available with an adverse inference in determining the provisions of caustic soda and synthetic yarn for less than adequate remuneration are *de facto*

specific is supported by substantial evidence and is otherwise in accordance with law.  In the remand results, Commerce evaluated the record regarding these programs and further explained its determination for finding that, based on facts available with an adverse inference, these provisions are *de facto* specific within the meaning of the statute.  Remand Redetermination at 13-17.

Yama asserts that Commerce disingenuously suggests that no involvement by the Chinese government in pricing or production limits is accurate with respect to its finding that these provisions are not *de jure* specific, but not accurate with respect to its *de facto* analysis. Yama Remand Comments at 2.  Yama oversimplifies how Commerce determines specificity for inputs at less than adequate remuneration.

As Commerce explained in the remand results, it asked targeted questions related to *de facto* specificity apart from its questions regarding *de jure* specificity.  Remand Redetermination at 23.  Even where a subsidy may not be specific based on the laws by the foreign government (*i.e.*, *de jure*), it still may be specific "in fact" (*i.e.*, *de facto*) based on the workings of the industries that consume the relevant input.  *Id.*

Commerce, thus, asked the Chinese government questions unique to its *de facto* analysis, including that the Chinese government:  (1) provide a list of industries in China that purchase synthetic yarn and caustic soda; (2) provide the amounts (volume and value) purchased by the industry in which the mandatory respondent company operates, as well as the totals purchased by every other industry; and (3) identify the classification scheme the government normally relies on to define industries and classify companies.  *Id.* at 23.  Whether the provision "in fact" is specific is a determination reserved for Commerce's analysis based on the responses it receives to those questions and other relevant evidence on the record.

11

Commerce explained that while the Chinese government had responded to Commerce's *de jure* specificity question "by indicating that it does not regulate the pricing of synthetic yarn or caustic soda, and the provision of synthetic yarn and caustic soda is dictated by market forces, not by any plan that sets the levels of production or the development of these inputs," the government had failed to respond to Commerce's questions regarding *de facto* specificity.  *Id.* at 22-23.  In other words, Commerce explained that this "was non-responsive to Commerce's *de facto* specificity questions as it provided no list of industries, as requested."  *Id.* at 23.  And in response to a supplemental questionnaire again requesting information sufficient to conduct a *de facto* analysis, the Chinese government had responded that it did not maintain such information."  *Id.* at 24.  Commerce explained that it continued to "find that the {Chinese government} did not provide Commerce with the information required to perform a *de facto* specificity analysis."  *Id.*

Moreover, contrary to Yama's argument that Commerce's determination that these provisions for less than adequate remuneration are *de facto* specific is "based on speculation," Yama Remand Comments at 2, Commerce explained that this determination was based on facts available with an adverse inference that relied on record evidence.  Remand Redetermination at 15-16 (citing New Subsidy Allegation Memorandum).   This evidence demonstrated that synthetic yarn is solely used by the textile industry in China and that caustic soda is used by six industries in China.  *See id.* at 15-16.  Commerce explained that it has previously found a subsidy to be *de facto* specific when eight industries used an input in China, with these industries limited in number.  *Id.* at 15 (citing *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*, 73 Fed. Reg. 31,966 (Dep't of Commerce June 5, 2008) (final countervailing duty determin.), and accompanying IDM at cmt. 7).  Accordingly, Commerce determined that use of synthetic yarn and caustic soda to one and six industries, respectively, is limited to a few

12

industries, and, therefore, is *de facto* specific within the meaning of 19 U.S.C. § 1677(5A)(D)(iii)(I).  *Id.* at 15-16.

Contrary to Yama's argument that Commerce did not comply with the Court's order because Commerce reanalyzed the record regarding these provisions, Yama Remand Comments at 3, the remand order did not prohibit Commerce from reanalyzing the record.  Indeed, the Court held that "Commerce acted unlawfully in deciding to include subsidy rates related to Yama's synthetic yarn and caustic soda inputs *without considering all relevant record evidence*, in particular the uncontradicted record evidence that no programs existed during the {period of review} that provided these inputs at {less than adequate remuneration."  *Yama*, 517 F. Supp.3d at 1341 (emphasis added).  The Court continued that, "Commerce, in addition, *did not conduct an analysis sufficient to support an adverse inference* that any such programs would have met the specificity requirement of the Tariff Act so as to result in countervailable subsidies."  *Id.* (emphasis added).

Although Yama argues that "{o}ne does not need to then address specificity, authorities, *etc*. if the subsidy question is fully answered in the negative{,}" Yama Remand Comments at 5, as discussed above, to comply with the remand order, Commerce considered all record evidence regarding these less than adequate remuneration programs, including the Chinese government's claims that these programs do not exist, and concluded that information on the record demonstrates that the Chinese government's assertions were incorrect.  Remand Redetermination at 13-17.  Commerce's analysis shows how these programs meet the specificity requirements of the statute, and still further, Commerce explained that the Chinese government had "provided no response challenging the substance of this record information, despite having the opportunity to do so."  *Id.* at 16.

Further, contrary to Yama's assertions that Commerce failed to comply with the statute before imposing facts available with an adverse inference, and that there is no gap on the record to fill, Yama Remand Comments at 5, Commerce explained the statutory authority under which it was applying facts available with an adverse inference and the gap in the record created as a result of the Chinese government's nonresponsive replies to Commerce's questions regarding *de facto* specificity.  *See* Remand Redetermination at 13-17.

Relatedly, Yama argues that it is unreasonable to determine facts available with an adverse inference is warranted when a party does not have the data requested.  Yama Remand Comments at 6.  However, Commerce explained that record evidence indicates the Chinese government *does* have such data.  *See* IDM at 10-11.  The record indicates that in prior countervailing duty proceedings, Commerce confirmed at verification that the Chinese government maintains electronic systems that collect business registration information, business licenses, annual reports, and capital verification reports, among other information.  *Id.* at 11 n.40. Thus, the Chinese government has an electronic system available to it to gather the industry-specific information Commerce had requested.  *Id.*  Accordingly, because the record indicates such information was available to the Chinese government, substantial evidence supports Commerce's determination that facts available with an adverse inference is warranted as a result of the government's failure to act to the best of its ability in providing this information.  *See Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1383 (Fed. Cir. 2003) (holding that adverse inferences may be applied "under circumstances in which it is reasonable for Commerce to expect that more forthcoming responses should have been made; *i.e.*, under circumstances in which it is reasonable to conclude that less than full cooperation has been shown.").

Finally, the Court should reject Yama's argument that Commerce has framed the less than adequate remuneration issue "incorrectly," alleging that "{f}or decades, Commerce has gone unchallenged in its framing of the specificity question to ensure that no industry in China can win this argument." Yama Remand Comments at 7. Yama's assertion that the Chinese government could not have failed to respond to a question Commerce did not ask because Commerce should have asked it about "subsidies" in its questionnaires rather than a "law, plan, policy, or program" is also incorrect. *Id.* at 4-5.

Under Commerce's analysis of the provision of goods and services for less than adequate remuneration, a countervailing subsidy exists when an authority provides a good for less than adequate remuneration when a benefit is conferred and when the provision of that subsidy is specific. Remand Redetermination at 21. Commerce explained that a separate finding of the existence of a "program" is not required under the law and is not part of its determination, because Commerce looks specifically to the subsidy itself. *Id.* In other words, "an authority can provide a subsidy by providing a good at less than adequate remuneration to an enterprise, industry, or group thereof, notwithstanding whether the government intended to subsidize the recipient or set up a program to do so." *Id.*

As a result, "Commerce does not place weight on the {Chinese government's} statements concerning whether a program exists," because "the only questions under the statute are whether the authority provided the respondent with a financial contribution, whether the subsidy is specific, and whether a benefit is thereby conferred." *Id.* And here, "Commerce sought evidence on whether Yama's synthetic yarn and caustic soda input producers were authorities under the law, whether the prices of the inputs purchased were made at prices that are at {less than adequate remuneration}, and whether the subsidy provided was limited to an enterprise,

industry, or group thereof." *Id.* at 21. Commerce's questions were relevant to this analysis, but Commerce explained that the Chinese government had "failed to provide a sufficient response." *Id.* at 22; *see also id.* ("the {Chinese government} failed to provide information relevant to Commerce's analysis regarding whether caustic soda or synthetic yarn were provided to Yama for {less than adequate remuneration} (not simply whether the {Chinese government} believed such an {less than adequate remuneration} program to exist)").

### B.   Commerce's Reliance On The 2015 New Subsidy Allegation Was Lawful

Yama argues that the new subsidy allegation does not pertain to this review and that Commerce did not have the authority to place such information on the record. Yama Remand Comments at 2. However, the new factual information Commerce placed on the record is directly relevant to the remand order where the Court held that Commerce "did not conduct an analysis sufficient to support an adverse inference that any such programs would have met the specificity requirement of the Tariff Act so as to result in countervailable subsidies" and directed Commerce to "take corrective action that is necessary to fulfill the requirements of the statute." *Yama*, 517 F. Supp. 3d at 1341; *see also* Remand Redetermination at 17. Thus, Commerce's inclusion and analysis of the 2015 New Subsidy Allegation comply with the Court's instructions, and are lawful, as we explain below.

The Court consistently has recognized Commerce's ability to reopen the record where the Court has not barred Commerce from doing so. *See Shandong Rongxin*, 203 F. Supp. 3d at 1338 (holding that Commerce was authorized to reopen and supplement the record on remand where the remand did not bar reopening of the record); *Fresh Garlic Producers Ass'n v. United States*, 190 F. Supp. 3d 1302, 1306 (Ct. Int'l Trade 2016) ("Commerce generally may reopen the administrative record on remand."); *Laclede Steel Co. v. United States*, 1995 WL 476716, at *2

16

(Ct. In't Trade 1995) ("Any decision to expand the administrative record upon remand is well within {Commerce's} discretion, absent express language from the court barring such action."); *cf. Nippon Steel Corp. v. Int'l Trade Comm'n*, 345 F.3d 1379, 1382 (Fed. Cir. 2003) ("Whether on remand the Commission reopens the evidentiary record, while clearly within its authority, is of course solely for the Commission itself to determine.").

Yama, however, argues that the new subsidy allegation data has "zero relevance" to the issues in the underlying review because it includes data that is outdated. Yama Remand Comments at 9. But Commerce explained that it found this information relevant to its analysis because it directly relates to the provisions of synthetic yarn and caustic soda for less than adequate remuneration and is the information on which Commerce relied to initiate these programs in the prior, 2015 administrative review. Remand Redetermination at 24. Additionally, Commerce explained that there is "nothing on the record to indicate that the information on which {it} relied to initiate these programs in the 2015 administrative review was not still relevant during the 2016 administrative review and did not represent the makeup of the synthetic yarn and caustic soda industries during the {period of review}." *Id.* Additionally, Commerce explained that although interested parties had the opportunity to submit record information to rebut this information that identified the makeup of the synthetic yarn and caustic soda industries, no party elected to do so. *Id.* at 7-8 (explaining that Yama only argued that Commerce was not permitted to place new factual information on the record and requested its removal).

## CONCLUSION

For these reasons, we respectfully request that this Court sustain Commerce's remand results, and enter final judgment in favor of the United States.

17

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Patricia M. McCarthy
PATRICIA M. MCCARTHY
Assistant Director

OF COUNSEL:                                    /s/ Kara M. Westercamp
Rachel Bogdan                               KARA M. WESTERCAMP
Attorney                                         Trial Attorney
Office of the Chief Counsel            U.S. Dept. of Justice
for Trade Enforcement and Compliance   Civil Division
U.S. Department of Commerce           Commercial Litigation Branch
Washington, D.C.                       P.O. Box 480
                                            Ben Franklin Station
                                          Washington, D.C. 20044
                                          Telephone: (202) 616-9322
                                          E-mail: Kara.M.Westercamp@usdoj.gov
September 28, 2021                     Attorneys for Defendant

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Standard Chambers Procedure ¶ 2(B)(2), I hereby certify that this brief complies with the appropriate word-count limitation. According to the word-count function of the software used to prepare this brief, the brief contains 4,951 words.

s/ Kara M. Westercamp
Kara M. Westercamp

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY J. STANCEU, SENIOR JUDGE

| | | |
|---|---|---|
| YAMA RIBBONS AND BOWS CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | Court No.:  19-00047 |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BERWICK OFFRAY, LLC, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |
| | ) | |

**<u>ORDER</u>**

Upon consideration of plaintiff Yama Ribbons and Bows Co., Ltd. comments regarding the United states Department of Commerce's (Commerce) remand redetermination, defendant's response thereto, and all other pertinent papers, it is hereby

ORDERED that Commerce's remand results are sustained.

_____
Senior Judge

Dated: _____
          New York, New York

20